FILED

2011 Aug-12  AM 10:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ERICA LUNDBERG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:11-CV-0282-VEH** |
| | ) | |
| **ROGUE TAVERN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Plaintiff Erica Lundberg ("Ms. Lundberg") initiated this job discrimination case arising under the Pregnancy Discrimination Act of 1978 ("PDA"), an amendment to Title VII of the Civil Rights Act of 1964, against Defendant Rogue Tavern ("Rogue") on January 27, 2011.   (Doc. 1).   Pending before the court is Ms. Lundberg's Motion for a Protective Order (Doc. 16) (the "Motion") filed on August 2, 2011.

The Motion challenges a series of subpoenas issued by Rogue relating to Ms. Lundberg's three exclusively former employers (*i.e.*, Interiorscapes, Inc. ("Interiorscapes"), Delia's, and Southern Progress Corporation ("Southern Progress") as well as her current (and former) place of employment at Jim N' Nicks.   (*See*

*generally* Doc. 20-1; *see also* Doc. 20-2 at 5 (detailing Ms. Lundberg's employment history)). The Motion seeks the entry of a protective order "forbidding the discovery of Plaintiff's former employment history and limiting the scope of discovery of her post employment records to her information relevant to her damage calculations." (Doc. 16 at 1). The Motion also asks the court to quash the subpoenas. (Doc. 16 at 9 ¶ 27).

Rogue filed its corrected opposition (Doc. 20) to the Motion on August 8, 2011. On August 11, 2011, the court held a hearing on the Motion. For the reasons stated in open court and as explained below, the Motion is **MOOT IN PART**, **GRANTED IN PART**, and **OTHERWISE DENIED**.

## II.   Standards

### A.   Discovery Orders Generally

Regarding discovery rulings:

> A district court has wide discretion in discovery matters and our review is "accordingly deferential." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). A court abuses its discretion if it makes a "clear error of judgment" or applies an incorrect legal standard. *Carpenter v. Mohawk Indus., Inc.*, 541 F.3d 1048, 1055 (11th Cir. 2008) (per curiam). Moreover, a district court's denial of additional discovery must result in substantial harm to a party's case in order to establish an abuse of discretion. *See Leigh v. Warner Brothers, Inc.*, 212 F.3d 1210, 1219 (11th Cir. 2000).

*Bradley v. King*, 556 F.3d 1225, 1229 (11th Cir. 2009); *accord Iraola & CIA, S.A. v.*

*Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 ("Moreover, we will not overturn

discovery rulings 'unless it is shown that the District Court's ruling resulted in

substantial harm to the appellant's case.'") (11th Cir. 2003) (citation omitted).

### B.    Rule 26 Protective Orders Specifically

Federal Rule of Civil Procedure 26(c) specifically provides that a party may file a motion for a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). The district court may issue a protective order if "good cause" is shown, and such an order "is not subjected to heightened scrutiny." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987); *see also* Fed. R. Civ. P. 26(c). The burden is on the movant to show the necessity of the protective order, and the movant must meet this burden with a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978). In addition to requiring good cause, the district court must "<u>balance the interests</u> of those requesting the order." *McCarthy*, 876 F.2d at 91.

*Ekokotu v. Federal Exp. Corp.*, 408 Fed. Appx. 331, 335-36 (11th Cir. 2001)

(emphasis added) (footnote omitted); *see also Seattle Times Co. v. Rhinehart*, 467

U.S. 20, 36 (1984) ("Rule 26(c) confers broad discretion on the trial court to decide

when a protective order is appropriate and what degree of protection is required[,] .

. . [and] [t]he trial court is in the best position <u>to weigh fairly the competing needs and</u>

<u>interests of parties</u> affected by discovery.") (emphasis added) (footnote omitted).

### III.    Analysis

#### A.    Timeliness

Preliminarily, Rogue challenges Ms. Lundberg's Motion on timeliness grounds. More particularly, Rogue points to the fact that the Motion was filed more than fourteen days after July 12, 2011, the date on which the subpoenas issued, and subsequent to July 27, 2011, the deadline for each non-party to produce records responsive to the subpoenas. In raising this procedural issue, Rogue only references non-binding cases that address appropriate time limits for filing a motion to quash under Rule 45.  (*See* Doc. 20 at 2-3; *see also* Rule 45(c)(3)(A) ("On timely motion, the issuing court must quash or modify a subpoena that: . . . .").

However, the Motion presently before the court is not brought solely pursuant to Rule 45, but also under Rule 26.  A reading of Rule 26 reveals no comparable temporal requirement regarding when a motion for protective order should or must be filed.

Additionally, Ms. Lundberg filed her Motion less than one week from the deadline set in the subpoenas for compliance and only after the parties' efforts to agree on a modification to the language contained in them were unsuccessful.  (Doc. 16 at 2 n.1).  Therefore, under such circumstances, the court treats the Motion as timely presented both under Rule 26 and Rule 45.

4

**B.     Merits**

Each subpoena asks for the production of the following identical categories of

work-related materials:

> Any and all records or other documents of any nature, including audio or video tape recordings prepared at any time that evidence, refer or relate to Erica Leigh Lundberg, a/k/a Erica Leigh Smith, Date of Birth _____ and Social Security No.: XXX-X _____ and her application for employment or association with [name of employer] including but not limited to, applications, personnel files, disciplinary notices or files, memoranda, notes, reports, correspondence and payroll records.

(*See, e.g.*, Doc. 20-1 at 4; *id.* at 7; *id.* at 10; *id.* at 13).

In support of her Motion, Ms. Lundberg maintains that the subpoenas seek

irrelevant information, are overly broad, and subject her to annoyance,

embarrassment, oppression, and undue burden.  (Doc. 16 at 2-3 ¶ 6 (citing Fed. R.

Civ. P. 26(c)).  Rogue responds that the discovery sought by way of these subpoenas

is permissible for multiple reasons including after-evidence/credibility, mitigation of

damages, emotional distress damages, impeachment, and verification of information

provided by Ms. Lundberg.  (Doc. 20 at 5).  The court engages in a balancing of the

parties' competing interests as explained below.

**1.     Ms. Lundberg's Current Employer**

The Motion is **MOOT** with respect to the Jim N' Nick's subpoena because the

dispute has been resolved by the parties.

### 2.    Ms. Lundberg's Former Employers

As stated at the hearing, the Motion is **MOOT** with respect to the Southern Progress subpoena because the company has reported to defense counsel that it has no records relating to Ms. Lundberg.  This leaves for resolution by the court the parties' dispute over the scope of the Interiorscapes and Delia's subpoenas.

As stated during the hearing, the court finds that the unlimited temporal scope of these subpoenas is unreasonable.  Therefore, Ms. Lundberg has shown good cause under Rule 26 for a protective order that narrows the responsive time period, and the Motion is **GRANTED** to this extent.

The court also concludes that Rogue's efforts to obtain such sweeping discovery from former employers (including applications, memos, and disciplinary notices)[1]  based upon a merely theoretical after-acquired evidence defense (*i.e.*, in the absence of an articulated employment-related offense attributable to Ms. Lundburg) is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad.  *See, e.g., E.E.O.C. v. Jack Marshall Foods, Inc.*, No. 09-0160-WS-M, 2010 WL 55635, at *2 (S.D. Ala. Jan. 4, 2010) ("The Magistrate Judge cited two

---

[1]  Discovery of former payroll information is **MOOT** as withdrawn by Rogue at the hearing.

cases for the proposition that a defendant cannot seek discovery for this purpose 'in the absence of some basis for believing that after-acquired evidence of wrongdoing will be revealed,' and the Court has found others to the same effect.") (internal citation omitted); *Jack Marshall*, 2010 WL 55635, at *2 ("Neither [additional authority relied upon by employer] provided any justification for allowing a suspicionless search for after-acquired evidence, and neither accounted for the Supreme Court's caution that '[t]he concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is not an insubstantial one,' but one that can be deterred by 'invok[ing] the appropriate provisions of the Federal Rules of Civil Procedure.'") (quoting *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 363 (1995)).  Therefore, the Motion is **GRANTED** as to this point.

Similarly, searching for evidence to support vague impeachment/credibility issues because, *e.g.*, Ms. Lundberg may have been mistaken, incomplete, or even untruthful when filling out another employer's job application, is simply too disconnected to this lawsuit to be discoverable, especially given this court's duty to weigh the parties' divergent interests. *See, e.g., Jack Marshall*, 2010 WL 55634, at * 3 ("Finally, the Magistrate Judge cited a case for the proposition that a predicate to such discovery is a basis for believing it will uncover evidence of falsehood, which

basis the defendant lacks.") (citation omitted); *id.* ("This [*i.e.*, the foregoing legal principle] is a precaution consonant with the Eleventh Circuit's view that 'the discovery rules do not permit [a party] to go on a fishing expedition.'") (citation omitted); *see also Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) ("[T]he discovery rules do not permit [a party] to go on a fishing expedition."). Likewise, discovering all these records for generalized verification purposes is not reasonably calculated to lead to the discovery of admissible evidence. Therefore, the Motion is **GRANTED** as to these areas of excessive discovery.

However, at the same time, the court agrees with Rogue that Ms. Lundberg has placed her emotional state into issue because she seeks emotional distress damages stemming from her separation from Rogue. Therefore, discovery of pre-Rogue employment records from Interiorscapes and Delia's that might reflect upon Ms. Lundberg's mental state is appropriate under Rule 26. Therefore, to that degree, Ms. Lundberg's Motion is **DENIED**.

Balancing these competing interests, the court concludes that Rogue should be entitled to discover any pre-Rogue employment records from the period beginning

January 1, 2005,[2] and going forward that relate to Ms. Lundberg's mental state.[3]  To facilitate this discovery, Plaintiff's counsel is **ORDERED** to confer with his client no later than August 19, 2011, and find out if she has tax returns for tax years 2005 through 2010, which would show who her employers were during these time periods. If Ms. Lundberg does have these returns, then her counsel is further **ORDERED** to provide those returns to Rogue no later than August 29, 2011, redacted to reflect only Ms. Lundberg's name, the year of the tax filing, and the names of her employer(s).

Additionally, if Ms. Lundberg's tax returns establish that her employment with Interiorscapes and/or Delia's began in or covered a portion of 2005 or later, then counsel for Rogue shall contact those former employers and have them deliver to Ms. Lundberg's counsel all records that are responsive to the subpoenas.  Ms. Lundberg's attorney will then review those materials and produce to Rogue any documents which reflect upon Ms. Lundberg's mental state that post-date December 31, 2004, or alternatively notify Rogue that there are no such records.

If Ms. Lundberg no longer has copies of her 2005-2010 returns or only a

---

[2] When negotiating the terms of Ms. Lundberg's HIPAA release, the parties agreed to January 1, 2005, as the appropriate starting point for providing medical information.

[3] The Motion is **MOOT** concerning the discovery of any materials that pre-date January 1, 2005, because such request was withdrawn by Rogue at the hearing.

9

portion of them, then, for any year as to which Ms. Lundberg lacks returns, Rogue and Ms. Lundberg may agree to follow the same procedure explained above, *i.e.*, have Interiorscapes and Delia's produce all subpoenaed materials to Ms. Lundberg's counsel for him to review for (and deliver to opposing counsel) any documents that post-date December 31, 2004 and that evidence Ms. Lundberg's mental state. Alternatively, the parties may jointly file a notice advising the court about the unavailability of some or all of Ms. Lundberg's tax returns and explaining what additional court intervention is requested.

## IV.   Conclusion

In sum, for the reasons explained above, the Motion is **MOOT IN PART**, **GRANTED IN PART**, and **OTHERWISE DENIED**.   Additionally, the court concludes that, in light of the above rulings, none of the subject subpoenas should be quashed.

**DONE** and **ORDERED** this the 12th day of August, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge